No. 89,655

JOSEPH L. NATALINI, *Appellee*, v. BLAKE A. LITTLE, M.D., *Appellant.*

(92 P.3d 567)

Opinion filed June 25, 2004.

*Charles Henry Stitt*, of Shaffer, Lombardo, Shyrin, of Kansas City, Missouri, argued the cause, and *Gregory P. Forney*, of the same firm, was with him on the briefs for appellant.

*Fred J. Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, argued the cause, and *Thomas E. Hayes* and *Lori Bolton Fleming*, of the same firm, were with him on the brief for appellee.

*Scott C. Nehrbass* and *Michael T. Jilka*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

BEIER, J.: Plaintiff Joseph Natalini brought this medical malpractice action against defendant Blake A. Little, M.D., for failing to diagnose Natalini's lung cancer. At trial, Natalini was still alive and was expected to survive approximately 8 more months. Although he outlived that prediction, he has died since this court heard argument on this appeal.

The issue before us is whether the jury properly awarded wrongful death damages to Natalini's wife and adult children. We hold that no such damages were available in Natalini's medical malpractice action and reverse and vacate that portion of the jury's award. Our holding on this issue eliminates the need to address

Little's alternative argument that the statutory cap on noneconomic damages was exceeded.

Natalini was referred to Little in March 1996 after detection of two nodules in Natalini's right lung. Little and Natalini agreed to have the nodules monitored with serial chest computerized tomography scans (CTs), which were performed in March, April, May, and November of that year. The November CT revealed a new, third nodule.

At an appointment on December 2, 1996, Little ordered another chest CT within 2 months. Natalini went to Dr. Douglas Weddle on December 19, 1996, to have the CT performed; and a member of Weddle's staff called Little's office to clarify Little's instructions. Little said that a chest x-ray instead of the CT would be acceptable. The chest x-ray was taken in February 1997.

Natalini did not see Little again until July 1998, when Weddle referred him back. Little then referred Natalini to a cardiothoracic surgeon, who diagnosed Natalini's lung cancer.

Natalini filed this action on July 14, 2000. Little admitted he had failed to meet the standard of care after the November 1996 CT, acknowledging he should have followed up with his patient based on the results of that scan and of the February 1997 x-ray.

During trial, in June and July 2002, Natalini was 59 years old. His cancer had spread, and neither side in the case expected him to survive until Christmas of that year. In contrast to Natalini's prospects, the additional life expectancy of a healthy white male his age was 19.7 years. Natalini, of course, had alleged that Little's negligence would be the cause of his premature death.

Natalini sought damages for his personal injuries, including pain, suffering, disability, mental anguish, loss of enjoyment of life, past and future medical bills, and past and future loss of consortium for his wife. None of those categories of damages is in issue on this appeal.

Natalini also claimed damages for his family as a result of his premature death: bereavement; mental anguish and suffering; loss of protection, advice, counseling, attention, and a complete family; and loss of pension and household services. The defense has con-

sistently argued that these damages could be recovered by Natalini's family only in a wrongful death action.

Little first sought to exclude evidence of these damages and objected to plaintiff's proposed jury instructions. He termed this part of the action an "anticipatory wrongful death" claim, on behalf of the plaintiff's family. He also argued that the claim would lead to noneconomic damages in excess of the statutory cap of $250,000. The district judge rejected Little's arguments.

As a result, the jury was instructed:

"In determining the amount of damages sustained by the family of Joseph Natalini, you should allow the amount of money which will reasonably compensate them for the damages resulting from the premature death of Joseph Natalini. . . . [You should allow an] amount which you believe to be equivalent to the monetary benefits or compensation the family of Joseph Natalini could reasonably have expected to receive from Joseph Natalini during his previous anticipated life expectancy."

"The individuals you may find sustained damages are: . . . Judith Natalini, wife, Joseph Natalini, Jr., Brian Natalini, Steven Natalini, Mark Natalini, and Brenda Natalini Robinson."

The jury found that Little's conduct would result in Natalini's premature death and awarded the following damages to these family members:

| | |
|---|---|
| Noneconomic loss | $600,000.00 |
| Economic loss | $349,005.00 |
| TOTAL DAMAGES SUSTAINED BY JOE NATALINI'S FAMILY | $949,005.00 |

The award of noneconomic damages to the family members was remitted to $250,000, pursuant to K.S.A. 60-19a02.

After trial, Little moved to modify the judgment or for a new trial, arguing again that the district judge improperly permitted the jury to consider "the type of damages that may only be recovered in a wrongful death action, in favor of persons who are not parties to the action, in connection with a person who was still alive, at the time of trial." The district court again rejected Little's arguments.

On appeal, Natalini's counsel has not disputed that he sought a separate award of damages for members of his client's family to avoid the otherwise harsh effect of the intersection between K.S.A. 2003 Supp. 60-513(c), which includes a statute of repose for med-

ical malpractice lawsuits, and K.S.A. 60-1901, which outlines the requirements for a Kansas wrongful death action.

K.S.A. 2003 Supp. 60-513(c) reads:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

K.S.A. 60-1901 reads:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom *if the former might have maintained the action had he or she lived* . . . against the wrong-doer." (Emphasis added.)

Neither of these statutes is unclear or ambiguous. In circumstances like Natalini's, even if a malpractice plaintiff's premature death is highly likely to be caused by the malpractice, plaintiff's survival for more than 4 years beyond the negligent act means no wrongful death action will ever be possible. K.S.A. 2003 Supp. 60-513(c) and K.S.A. 60-1901 will combine to cut it off before it can accrue, *i.e.*, before the death giving rise to the action has occurred. Although family members of the patient would qualify at the time of death as heirs at law entitled to seek recovery in a wrongful death suit, see K.S.A. 60-1902, they would be prevented from bringing an action because 60-513(c)'s repose language would have barred the injured patient's own lawsuit before his or her death. See K.S.A. 60-1901; *Crockett v. Medicalodges, Inc.*, 247 Kan. 433, 440, 799 P.2d 1022 (1990) (if injured plaintiff's claim time barred before death, claim of heirs also barred); *Mason v. Gerin Corp.*, 231 Kan. 718, Syl. ¶ 1, 647 P.2d 1340 (1982) (K.S.A. 60-1901 requires "existence of a right of action in the injured person at the time of his death as a condition precedent to the existence of a right of action for wrongful death").

Natalini's counsel urges us to fashion a way around the combined effect of 60-513(c) and 60-1901 here. He raises the specter of can-

cer patients foregoing treatment to ensure they will die in time to allow their families to bring a wrongful death suit. He asserts that advances in medical science have enabled us to maximize the length of such patients' lives and that the law has not kept pace with these advances.

Even if we agree, it is not this court's role to rewrite statutes but to interpret them. Natalini does not seek interpretation; he seeks wholesale revision. We cannot oblige. The legislature is the branch of our state government endowed with the exclusive power to amend statutes, and it is to the legislature to whom arguments about the dilemma faced by families such as Natalini's should be addressed. See *State ex rel. Stephan v. Finney*, 251 Kan. 559, 583, 836 P.2d 1169 (1992).

Natalini's counsel also argues that permitting the family to recover in Natalini's action is no different from allowing a personal injury plaintiff to recover on behalf of his or her spouse for loss of consortium. We disagree.

A spouse's loss of consortium has long been recognized as recoverable in an injured person's suit against the tortfeasor. See K.S.A. 23-205; *Klaus v. Fox Valley Systems, Inc.*, 259 Kan. 522, 528-29, 912 P.2d 703 (1996). In contrast, neither Kansas common law nor Kansas statutes have recognized such an element of damages to compensate adult or even minor children of an injured plaintiff. Rather, Kansas is among the states which have rejected it. See Szarwark, *Recovery for Loss of Parental Consortium in Non-Wrongful Death Cases*, 25 Whittier L. Rev. 3, 5-6 nn. 11, 12 (2003) (Kansas' refusal to recognize child's loss of consortium action criticized despite consistency with that of courts in Arkansas, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Maine, Maryland, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New York, North Carolina, North Dakota, Oregon, Pennsylvania, South Carolina). Children also may not bring an independent cause of action in Kansas to recover for injuries to a living parent. See *Klaus*, 259 Kan. 522-23 (answering certified question; no cause of action despite recognition that "[w]hen the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something

that is indeed valuable and precious"); see also *Hoffman v. Dautel*, 189 Kan. 165, Syl. ¶ 1, 368 P.2d 57 (1962) ("[a] minor child has no cause of action for damages arising out of the disability of its father, caused by negligence of the defendant, with attendant loss of acts of parental guidance, love, society, companionship and other incidences of the parent-child relationship").

Natalini's counsel also argues that the award to Natalini's family in this case is analytically indistinguishable from allowing a plaintiff to recover for future economic or noneconomic damages flowing from a past injury even though the damages may never materialize. Again, we disagree.

Allowing recovery of future economic or noneconomic damages reasonably likely to arise from an *already certain negligent act or omission in the past* is fundamentally different from allowing recovery of damages arising from *a death whose future timing and causation cannot be certain.* In the first instance, the amount of the damages that will be suffered is not precisely known but the event that caused any such damages is. In the second instance, the event is not precisely known. It may or may not occur at all, much less in the manner expected.

In his brief, Natalini's counsel argues that the fact that his client was the real party in interest to bring the malpractice action also made him the real party in interest to pursue damages to be caused by his own future death. This argument is without merit. Kansas' wrongful death statutory scheme identifies the proper plaintiffs for pursuit of such damages. See K.S.A. 60-1902. The decedent, or, in this case, the anticipated decedent, is not among them.

The brief's further assertion that the members of Natalini's family were actual parties to this action also is without merit. Nothing in the record before us supports this assertion.

The brief's additional argument that the recovery of wrongful death damages in this suit protected Little by preventing the Natalini family from pursuing more than one lawsuit or splitting its cause of action also is without merit. There was always more than one cause of action possible as a result of Little's negligence, each with different prerequisites and available damages. This was not a function of the Natalini family's choice but of Kansas law. Up until

2 years after his injury became reasonably ascertainable, as long as that period did not exceed 4 years after the negligent act, Natalini had a medical malpractice action. Had he died as a result of Little's negligence within the 4 years, a wrongful death action also would have been possible. His attempt to recover wrongful death damages for his family while he lived did not protect Little. In fact, it eliminated the protection Little already enjoyed under the intersection of K.S.A. 2003 Supp. 60-513(c) and K.S.A. 60-1901.

Finally, Natalini's counsel has urged us to affirm the award to Natalini's family as a matter of equity. We admire his passion on behalf of his client's cause but cannot do so. The legislature specifically selected the 4-year time frame of 60-513(c), and wrongful death actions are completely creatures of statute. There is clear and unambiguous statutory law that binds us, and we cannot ignore it.

In sum, although we agree with plaintiff that a district judge has a responsibility to instruct the jury on a party's theory of the case if the theory is supported by evidence, *Wood v. Groh*, 269 Kan. 420, 423-24, 7 P.3d 1163 (2000), this rule tells only half of the story. Evidence may be all that is required to establish facts, but the facts must fit a cause of action recognized in Kansas' common law or statutes. The instructions given jurors must fairly inform them of the law governing the case. There was no law supporting the instructions given here to permit Natalini's wife and children to recover damages expected to be caused them by the future wrongful death of their husband and father. He could not recover such damages on behalf of his wife and adult children in a medical malpractice action pursued while he was still living.

Reversed. The jury's award of economic and noneconomic damages to plaintiff's family members is vacated.