(228 P.3d 1092)

No. 101,146

MACIE MARTIN, Individually and as Representative of the ESTATE OF CURLEY MARTIN, DECEASED, *Appellant*, v. SANDIP NAIK, M.D., and SPECIALTY HOSPITAL OF MID-AMERICA, *Appellees*.

Opinion filed April 15, 2010.

*Stephen G. Dickerson*, of the Dickerson Law Group, of Olathe, for appellant.

*Timothy P. McCarthy*, of Gilliland & Hayes, P.A., of Overland Park, for appellee Sandip Naik, M.D.

*Roger W. Slead* and *Richard M. Acosta*, of Horn, Aylward & Bandy, LLC, of Kansas City, Missouri, for appellee Specialty Hospital of Mid-America.

Before RULON, C.J., MCANANY and LEBEN, JJ.

MCANANY, J.: This appeal presents a couple of deceptively simple questions. First, does the statute of limitations start to run on a medical malpractice claim at the time of injury when the defendant's conduct causes the patient to suffer a coma from which he never recovers? Second, when the patient's heirs bring a wrongful death action following the patient's death, is that claim barred by the statute of limitations if it is not brought within 2 years after the negligent conduct that caused the patient's coma and eventual death? After rambling through a briar patch of somewhat confusing authorities on these issues (a confusion to which we hope we are not adding), we arrive at our answer to each of these questions which is: No.

Macie Martin (Martin) sued Sandip Naik, M.D. (Naik), and Specialty Hospital of Mid-America (Hospital) for the wrongful death of her husband, Curley Martin (Curley). She also brought a survival action as the personal representative of Curley's estate for the injuries and damages Curley sustained prior to his death. The district court ruled these claims were time-barred and granted summary judgment to the defendants. Martin appeals. We reverse and remand.

On appeal we consider de novo Naik's and the Hospital's summary judgment motions. See *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 240, 201 P.3d 680 (2009). In doing so, we apply the same standards applicable to the proceedings before the district court. Further, to the extent this appeal requires statutory interpretation, we construe the relevant statutes de novo.

See *Double M. Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271, 202 P.3d 7 (2009).

While Naik and the Hospital deny any negligence on their part, the following facts were uncontroverted solely for purposes of resolving the defendants' summary judgment motions.

*Facts*

On March 31, 2004, Curley was admitted to the Hospital under Naik's care. During the evening of April 7, 2004, Martin observed a nurse having difficulty with equipment that provided nutrition and medications to Curley and heard comments from the nurse to this effect. Later that night, Curley's blood glucose dropped to a critically low level, and a nurse employed by the Hospital negligently administered insulin.

By the next morning, April 8, 2004, Curley's condition had deteriorated. He was unresponsive and apparently in a diabetic coma. Curley was transferred to Shawnee Mission Medical Center (SMMC) that morning, but the transfer was delayed due to Naik's negligence.

Curley's condition did not improve. He suffered irreversible brain damage. While treating Curley at SMMC, Dr. Samuel Lehman told Martin and her family that when the Hospital's staff allowed Curley to go into a diabetic coma, they had essentially killed him. Curley later died on October 25, 2004.

On October 25, 2006, 2 years to the day following Curley's death, Martin filed suit on behalf of herself and Curley's other heirs for his wrongful death and as the personal representative of Curley's estate for the survival action. She alleged that the negligence of Naik and the Hospital on April 7 and 8, 2004, caused the injuries that led to Curley's death.

Martin was aware of the defendants' claimed negligent conduct at the time it occurred. On April 8, 2004, Martin was aware of the injurious consequences to Curley when his condition worsened and he slipped into a coma from which he never recovered.

*Statutes*

As a preliminary matter, we must be mindful of the distinctions between wrongful death actions authorized by K.S.A. 60-1901 *et seq.* and survival actions authorized by K.S.A. 60-1801 *et seq.*

A wrongful death action may be brought by the deceased's heir at law "who has sustained a loss by reason of the death." K.S.A. 60-1902. The action is brought on behalf of all the heirs who sustained a loss. Compensable damages to the heirs in a wrongful death action include pecuniary as well as nonpecuniary damages, such as loss of support, loss of companionship, and mental anguish, sustained by the heirs on account of the decedent's death. K.S.A. 60-1903 and 60-1904.

A survival action, on the other hand, is brought by the personal representative of the decedent's estate in order to compensate the estate for the damages sustained by the decedent prior to death as a result of the defendant's improper conduct. See *Mason v. Gerin Corp.*, 231 Kan. 718, 721, 647 P.2d 1340 (1982).

The outcome of this case is controlled by application of K.S.A. 60-513 to the facts before us. This statute requires:

"(a) The following actions shall be brought within two years:

. . . .

(5) An action for wrongful death.

. . . .

(7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract.

. . . .

"(c) A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

In considering this statute we are mindful of the nature and purpose of statutes of limitation.

" 'Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [Citation omitted.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come

into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.' " *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 132, 631 P.2d 222 (1981) (citing *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 89 L. Ed. 1628, 65 S. Ct. 1137 [1945]).

We also must consider the applicability of K.S.A. 60-515, which provides in part:

"[I]f any person entitled to bring an action . . . , at any time during the period the statute of limitations is running, is . . . an incapacitated person . . . , such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action."

In its extensive Order Granting Summary Judgment, the district court analyzed various cases which we will discuss further. The court concluded that Martin's "causes of action here for medical negligence in the survival action and the wrongful death claim accrued April 8, 2004." Further, the court found no tolling of the statute of limitations on account of Curley's disability. Thus, the court found that both these causes of action were barred by the 2-year limitation found in K.S.A. 60-513.

*Survival Action*

Curley's claim of medical negligence survived his death pursuant to K.S.A. 60-1801. K.S.A. 60-513 required Martin to commence an action on this claim within 2 years following the later of (1) the defendants' medically negligent conduct, or (2) when Curley's injury became reasonably ascertainable "to the injured party" if it was not reasonably ascertainable at the time of the defendants' negligent conduct; but in no event later than 4 years after the defendants' negligent conduct. Thus, K.S.A. 60-513 is both a statute of limitations (2 years) and a statute of repose (4 years).

The survival action brought by Martin as the personal representative of Curley's estate is a tort action for negligence. Such a cause of action arises upon the confluence of its time-honored elements: the existence of a duty, the negligent breach of that duty, causation, and damages. Generally speaking, for the purpose of determining when the period of a statute of limitations begins to run, we look

to the "time when the plaintiff first had the right to file and prosecute the action to a successful conclusion." *Mason,* 231 Kan. at 722 (citing *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, 470 P.2d 797 [1970]). Though all the elements of this cause of action may be present so as to bring it into being and enable an injured party to prosecute it to a successful conclusion, if that party's existing injuries are not reasonably apparent, under K.S.A. 60-513(c) the cause of action is not "deemed to have accrued" until the damages are discoverable for the purpose of commencing the limitation period.

The phrase "reasonably ascertainable" is a bone of contention between the parties. The exact wording of the relevant part of K.S.A. 60-513(c) is as follows:

"[U]nless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . . ."

The cases the parties cite to support their respective positions are not particularly helpful because, for the most part, they fail to draw the necessary distinction between the plaintiff in a wrongful death action and the plaintiff in a survival action. Further, the cases do not answer the question: Reasonably ascertainable by whom?

Defendants contend that the fact of injury was apparent to Martin on April 8 when Curley's condition deteriorated and he slipped into a coma. However, what was apparent to Martin is immaterial because she is not the injured party in this survival action, Curley is, and Curley's injury was not apparent to him because he was in a coma from which he never recovered. Upon Curley's death, his medical negligence claim became an asset of his estate. At that time the fact of injury was reasonably apparent to the estate, the successor-injured party, thereby causing the survival action for medical malpractice to accrue and the running of the period of limitation to commence pursuant to K.S.A. 60-513(c). Thus, commencing the survival action exactly 2 years after Curley's death renders the action timely under K.S.A. 60-513(c).

The Hospital points out, however, that K.S.A. 60-513(c) does not use the phrase "ascertainable *to the injured party*" in the earlier

portion of K.S.A. 60-513(c), but rather simply uses the word "ascertainable." From this the Hospital argues that it is not necessary for Curley to be able to ascertain that he has a cause of action for medical negligence to start the running of the limitation period. Thus, it argues, the running of the statute of limitations on this damage claim, which is personal to Curley, commenced on April 8, 2004, even though Curley had no capacity to apprehend that he had a claim and no ability to do anything about it.

We reject this notion. Prior to Curley's death any claim for negligent care belonged solely to him. He was not a minor whose parent as next friend could bring an action for medical negligence on his behalf. We find nothing in the record to suggest that a conservator or other personal representative with the power to sue on his behalf had been appointed for Curley after this incident and before his death. There was no one charged with the legal responsibility of investigating and pursuing any possible claims on Curley's behalf while he was comatose.

Naik, the Hospital, and the district court relied on *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936 (1996). *Davidson* involved two wrongful death cases, rather than the survival action we are considering here. Nevertheless, the *Davidson* court considered the phrase "reasonably ascertainable" found in K.S.A. 60-513(b) and (c). The court determined that the phrase " 'reasonably ascertainable' means that *a plaintiff* has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation." (Emphasis added.) 259 Kan. at 678-79. Further, "[t]he term 'reasonably ascertainable' as applied in 60-513(b) and (c) in a wrongful death action suggests an objective standard based on an examination of the surrounding circumstances." 259 Kan. at 669.

Because these were wrongful death actions, the plaintiffs in *Davidson* upon whom the duty to investigate rested were the heirs of the decedents. There is no contention that they suffered under any disability or incapacity. They were simply dilatory in bringing these wrongful death actions when measured by "an objective standard based on an examination of the surrounding circumstances." 259 Kan. at 669. When considering the surrounding circumstances,

what does an objective standard tell us when considering whether the fact of injury is reasonably ascertainable to a prospective plaintiff who is comatose?

The *Davidson* court examined this discoverability issue in other contexts. "*Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980), a roof-leak case, provides guidance about when an injury becomes 'reasonably ascertainable' within the meaning of K.S.A. 60-513(b)." *Davidson,* 259 Kan. at 672-73. In *Friends*, the roof began to leak in 1970 or 1971. Repairs were not successful. An expert determined in April 1975 that the leak was caused by the defendant's defective roofing materials. Suit was filed in March 1977. The court observed that the " 'roof was obviously defective in some respect when leaking occurred. . . . At any time Friends could easily have obtained an expert opinion on the precise cause.' " *Davidson,* 259 Kan. at 673. In contrast, Curley was hardly in the position to take any action to determine his condition or its cause.

Curley's claim for medical malpractice was unique to him. Absent the appointment of a conservator he was the only person who could assert it during his lifetime. He could not assign this claim to another. See *Snider v. MidFirst Bank* 42 Kan. App. 2d 265, 270, 211 P.3d 179 (2009). When considering the "surrounding circumstances" in the course of applying an objective standard to the concept of "reasonably ascertainable," we conclude that Curley in his comatose state could not reasonably ascertain the fact of his injury.

The parties and the district court have referred to K.S.A. 60-515, which tolls the running of the statute of limitations during the period of incapacity but requires the action to be commenced within 1 year after the disability is removed. The application of K.S.A. 60-515 to Curley's survival action would have the effect of shortening the limitation period rather than tolling it. K.S.A. 60-515 does not apply when it shortens rather than tolls a limitation period. *Smith v. Yell Bell Taxi, Inc.,* 276 Kan. 305, 75 P.3d 1222 (2003).

K.S.A. 60-515, the tolling statute, has wider application than simply incapacitated persons. It also applies to persons whose disabil-

ities arise because of their minority or imprisonment. In the case of an incapacitated person, however, it applies only to a person who is incapacitated at the time the cause of action accrues or who later becomes incapacitated while the statute of limitations is running. As discussed earlier with respect to K.S.A. 60-513(c), because Curley could not reasonably ascertain the fact of his injury, his medical malpractice claim (the survival action) did not accrue so as to start the statute of limitations clock running until his death, so the 2-year limitation period of K.S.A. 60-513 did not commence to run at any time during the period of Curley's incapacity. The relevant portion of K.S.A. 60-515, its tolling provision, stops the clock that is running on an accrued but unfiled cause of action. Here, the clock was not running. It had not yet started. There was nothing for the statute to toll.

Naik and the Hospital were not entitled to summary judgment on this claim.

*Wrongful Death Action*

The district court found that the wrongful death cause of action asserted by Martin on behalf of Curley's heirs accrued on April 8, 2004, when he slipped into a coma, and therefore was time-barred. Martin argues that it did not accrue until the date of Curley's death, making the action timely.

An action for wrongful death may be brought by "any one of the heirs at law of the deceased who has sustained a loss by reason of the death." K.S.A. 60-1902. K.S.A. 60-1904 contains a nonexclusive list of the kinds of damages for which a wrongful death plaintiff may recover. Those damages are damages sustained by the heirs, not by the decedent. Unlike the survival action, which belongs to the decedent's estate and is prosecuted by the estate's personal representative, the wrongful death action belongs to the heirs and is prosecuted by them in their own right.

The right to bring a wrongful death action is a property right that vests at the time of the wrongful death. An earlier version of our wrongful death statute vested that right in the decedent's next of kin. See *White v. Atchison, T. & S.F. Rly. Co.*, 125 Kan. 537, 265 P. 73 (1928). Our current statute vests that right in an heir at

law. So who is the heir at law who can bring the action? Surely no suit can be brought—hence no claim can accrue—until that can be determined.

In *Johnson v. McArthur*, 226 Kan. 128, 596 P.2d 148 (1979), the decedent, who had no children, died in an automobile collision that also resulted in his wife's death 30 minutes later. A wrongful death action was brought by the decedent's parents. The issue was whether they were heirs at law who were entitled to bring the action for their son's death or whether the decedent's briefly surviving spouse was the only person who could have brought the action. Our supreme court noted that some courts distinguish an "heir"—one who succeeds to the property upon the death of another—from an "heir-at-law"—whom some courts characterize as an "heir apparent" who "has a prospect of future inheritance from a then living ancestor." 226 Kan. at 134. The court rejected the distinction and held that the terms are synonymous, and concluded that the parents were not "heirs at law" under the statute, K.S.A. 59-504, that made the decedent's now-deceased wife his sole heir. Thus, the parents' claim was dismissed.

In *Johnson*, the heir at law entitled to bring the wrongful death action was established at the time of the decedent's death. Similarly, Curley's heirs at law must be determined at the time of his death. The person entitled to bring a wrongful death action is not a mere "heir apparent" who may or may not ultimately be determined to be an heir at law. That determination must await the occurrence of the wrongful death. We find no support for the notion that a cause of action may accrue and start the running of the statute of limitations clock when there is no person who can be determined to have the right to bring suit on the claim.

K.S.A. 60-1901, our wrongful death statute, provides:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived, in accordance with the provisions of this article, against the wrongdoer . . . ."

Our next issue is the meaning of the provision in this statute that a wrongful death action may be brought "if the [decedent] might

have maintained the action had he or she lived . . . against the wrongdoer." The answer is found in *Mason*, 231 Kan. 718, in which the court affirmed its earlier decision in *Gaham v. Updegraph*, 144 Kan. 45, 58 P.2d 475 (1936), that when the decedent could not have brought an action for his injuries had he lived because of the running of the statute of limitations, the decedent's heirs are similarly barred from bringing a wrongful death action. While this seems to disregard the inherent difference between the nature of a wrongful death claim and the nature of a personal injury claim that survives the injured party's death, the right to maintain an action for wrongful death is strictly statutory, and our legislature has so defined it.

Under the facts before us, all the elements for a personal injury claim were present in April 2004. Curley died in October 2004, well within the 2-year limitation period. Up to the time of his death, Curley could have brought an action for his injuries had they been reasonably apparent to him. Thus, Martin's wrongful death action meets this prerequisite for suit contained in K.S.A. 60-1901 and explained in *Mason* and *Graham*.

K.S.A. 60-513(a)(5) requires the heirs to commence their wrongful death action within 2 years. Our next question is: Within 2 years of what?

The district court determined that the 2-year limitation period began to run on April 8, 2004, relying principally on *Crockett v. Medicalodges, Inc.*, 247 Kan. 433, 799 P.2d 1022 (1990), and therefore Plaintiff's claim, filed October 25, 2006, was time-barred.

In *Crockett*, which involved a survival action for medical malpractice as well as a wrongful death claim, injury from the defendant's malpractice was reasonably apparent in August 1983. The decedent died in May 1984, so the prerequisite of the decedent's ability to sue during her lifetime discussed in *Mason* and *Graham* did not bar the claim. Suit was filed in April 1986, within 2 years of death but more than 2 years after the malpractice personal injury action arose.

The *Crockett* court concluded that the latest date the wrongful death action could have accrued was August 23, 1983, the date of the injury. Suit was commenced on April 15, 1986. Therefore, the

wrongful death action was barred by the 2-year statute of limitations. 247 Kan. at 441. This is in spite of the fact that on the date of injury there was no heir at law who could prosecute the claim and there were no damages, all because the injured party was still alive. The *Crockett* court reached this curious result by relying on *Brubaker v. Cavanaugh*, 542 F. Supp. 944 (D. Kan. 1982). The *Crockett* court stated that in *Brubaker* the federal court "found that the limitations contained in 60-513(c) apply to wrongful death claims when the claim the injured party could have maintained during her life was failure to render professional services." *Crockett*, 247 Kan. at 441 (citing *Brubaker*, 542 F. Supp. at 947-48).

*Brubaker* involved both a survival action and a claim for wrongful death. In April 1960, Shirley Brubaker's father died of a cancer for which Shirley also was genetically disposed. From May 1960 to December 1968 Shirley was treated by the defendant, who had also treated her late father. The defendant failed to tell Shirley of her genetic predisposition to contracting the cancer that killed her father. Shirley died in 1981. When this suit was later filed, Shirley's malpractice claim (now morphed into a survival action) had long been time-barred by the 4-year statute of repose. Because her malpractice claim was extinguished before her death, the prerequisite for her heirs' wrongful death action (Shirley being able to sue for her injuries had she lived) was not met.

*Brubaker* clearly does not apply to the facts now before us and did not apply in *Crockett*. *Brubaker* was decided based upon the fact that the decedent's claim for her personal injuries had long expired due to the statute of repose.

While *Crockett* holds that a cause of action for wrongful death accrues at the time of the injury, not the date of death, a more recent Supreme Court case holds to the contrary. In *Natalini v. Little*, 278 Kan. 140, 92 P.3d 567 (2004), Natalini brought a personal injury action for medical negligence for failure to diagnose his lung cancer. He sued within 2 years following his cancer diagnosis. By the time of trial, Natalini was predicted to have only 8 months to live. Further, the statute of repose for a prospective wrongful death action was about to expire. Therefore, Natalini sought damages at trial not only for his personal injuries but also

damages for his family for their bereavement, mental anguish, loss of protection and advice, and the loss of his support and household services which he anticipated they would suffer upon his demise— damages the defendant characterized as part of an anticipatory wrongful death claim.

On appeal, our Supreme Court determined that these additional damages were not recoverable in Natalini's personal injury action. In doing so, the court noted the strategy Natalini hoped to employ:

"In circumstances like Natalini's, even if a malpractice plaintiff's premature death is highly likely to be caused by the malpractice, plaintiff's survival for more than 4 years beyond the negligent act means no wrongful death action will ever be possible. K.S.A. 2003 Supp. 60-513(c) and K.S.A. 60-1901 will combine to cut it off *before it can accrue, i.e., before the death giving rise to the action has occurred.* Although family members of the patient would qualify at the time of death as heirs at law entitled to seek recovery in a wrongful death suit, see K.S.A. 60-1902, they would be prevented from bringing an action because 60-513(c)'s repose language would have barred the injured patient's own lawsuit before his or her death. [Citations omitted.]" (Emphasis added.) 278 Kan. at 143.

Although the court in *Natalini* refers to *Crockett*, it holds contrary to *Crockett* that an action for wrongful death arises upon the decedent's death, and not before.

Further, the court in *Crockett* made no note of the following from *Mason*, though *Mason* clearly still is good law:

"This court recognized as early as 1912 in *Nesbit v. City of Topeka*, 87 Kan. 394, 124 Pac. 166, that a cause of action for personal injuries accrues to the injured party when he is injured, and a cause of action for wrongful death accrues to the heirs at the death of the injured party.

"However, this does not eliminate the qualifying condition in 60-1901 that the wrongful death action may be brought *if the decedent might have maintained the action had he or she lived.*" (Emphasis added.) *Mason*, 231 Kan. at 722.

Thus, once the wrongful death condition precedent is met (the decedent's right to sue had he or she lived), the statute of limitations for the decedent's personal injury action has no further effect on the wrongful death cause of action, which has its own statute of limitations and which begins to run on the date of death.

Earlier we discussed *Davidson*, 259 Kan. 659, regarding when the statute of limitations period begins to run on a personal injury claim when the fact of injury is not reasonably ascertainable to the

injured party. We now return to *Davidson* regarding the separate issue of the commencement date for the statute of limitations in a wrongful death action.

The court in *Davidson* cites the same language from *Nesbit v. City of Topeka*, 87 Kan. 394, 124 P. 166 (1912), cited by the court in *Mason*, which we quoted two paragraphs earlier in this opinion: " '[A] cause of action for wrongful death accrues to the heirs at the death of the injured party.' " *Davidson*, 259 Kan. at 670. While the *Davidson* court held that the heirs were dilatory in bringing their wrongful death actions, the court observed: "The phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation. Those facts appear to have been available . . . as of the date of death, more than 2 years before the actions were filed." 259 Kan. at 678-79.

The court in *Davidson* declared the fact of death should be a " 'starting point for inquiry.' " 259 Kan. at 666. In *Davidson*, the wrongful death actions were filed more than 2 years after death. The court noted:

"We have not established a 'bright line' rule that the wrongful death limitations period may never be extended beyond 2 years from the date of death. Here, there were no circumstances present justifying an extension, such as concealment of the fact of death or of medical records nor a misrepresentation, alteration, inaccuracy, or falsification of any type." 259 Kan. at 679.

The *Davidson* court recognized the possibility of extending the commencement date for the limitation period after death, not the possibility of causing the limitation period to commence *before* the decedent dies and *before* the cause of action comes into being. See *Dreiling v. Davis*, 38 Kan. App. 2d 997, 176 P.3d 197 (2008); *Bonura v. Sifers*, 39 Kan. App. 2d 617, 181 P.3d 1277 (2008).

We conclude that Martin's wrongful death action came into being at the time of Curley's death. Because this action was commenced within 2 years thereafter, the claim Martin asserts for herself and Curley's other heirs is timely. Naik and the Hospital were not entitled to summary judgment on this claim.

Reversed and remanded.