No. 97,855

JANET J. JEANES, as Administrator C.T.A. of the Estate of MAXINE J. ANTON, Deceased, *Appellant*, v. BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; RUDY WRENICK; and SHARON KUNARD, *Appellees.*

(295 P.3d 1045)

Opinion filed March 8, 2013.

*John R. Hamilton*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, argued the cause and was on the briefs for appellant.

*Curtis E. Woods*, of Sonnenschein Nath & Rosenthal LLP, of Kansas City, Missouri, and *Dolly R. Livingston*, of the same firm, were on the brief for appellee Rudy Wrenick.

*Thomas D. Haney,* of Henson, Clark, Hutton, Mudrick & Gragson, LLP, of Topeka, argued the cause, and *Thomas E. Beall,* of the same firm, was with him on the briefs for appellee Sharon Kunard.

*Per Curiam:* We are asked to determine if the personal representative of a decedent's estate may maintain a malpractice cause of action against the decedent's attorney for substandard estate planning that resulted in increased tax liability. We answer this question "no" because the cause of action arose after the decedent's death which means it does not qualify as a survival claim under K.S.A. 60-1801.

Accordingly, we affirm the judgment of the Court of Appeals and the district court on this issue.

## FACTS

On June 13, 1991, Maxine J. Anton created an inter vivos revocable trust. From the trust's inception to her death, Anton served as its sole trustee. Upon her death, the vast majority of the assets was to pass to her niece, Janet Jeanes, with the remainder funding charitable trusts for Anton's stepson and her personal assistant.

At Anton's request, Topeka attorney Sharon Kunard drafted the trust documents and a pour-over will. All later amendments were prepared by Kunard, who was last contacted by Anton for legal services in June 2000.

Bank IV, the predecessor of Bank of America (the Bank), was named successor trustee of Anton's trust and helped Anton serve as trustee by acting as her agent. Under a written agency agreement, Anton deposited her common stock and securities with the Bank and the Bank performed certain tasks for her. Since 1998, Rudy Wrenick helped manage Anton's account.

Anton died on April 25, 2003. Her estate tax return revealed a gross estate of $39,491,806. On January 24, 2004, her estate paid estate and inheritance taxes of $21,860,864.61.

On November 24, 2004, in Jeanes' capacity as administrator C.T.A. of Anton's estate, she sued the Bank, its parent company Bank of America Corporation (BAC), Wrenick, and Kunard. Against the Bank, BAC, and Wrenick, the petition alleged claims of negligence—and of breaches of fiduciary duty, contract, and

trust. Against attorney Kunard, the petition alleged claims of negligence and breaches of fiduciary duty and contract. These claims were based on the alleged failure of all the defendants to protect Anton's assets from tax liability. Specifically, Jeanes alleged that setting up a family limited partnership would have saved more than $6 million in death and estate taxes.

The Bank, BAC, and Wrenick moved for summary judgment. While noting that Jeanes had withdrawn her claims against BAC, the district court granted the motions. Kunard moved separately for summary judgment, which the district court likewise granted. Specifically, the court held that Jeanes' tort claims for legal malpractice did not survive Anton's death.

Jeanes appealed only the grant of summary judgment to Wrenick and Kunard to the Court of Appeals.

The Court of Appeals panel reversed part of the summary judgment for Wrenick, but affirmed it for Kunard. More particularly, the panel held:

"[S]ubstantial injury resulting from Kunard's alleged malpractice would have been the estate taxes imposed against Anton's estate, which did not arise until after Anton's death. Therefore, the cause of action for legal malpractice did not accrue in Anton's lifetime and did not survive her death." *Jeanes v. Bank of America*, 40 Kan. App. 2d 281, 299, 191 P.3d 325 (2008).

In her petition for review to this court, Jeanes only requests review of the panel's affirmation of the district court's grant of summary judgment to Kunard. Neither Wrenick nor Kunard filed a cross-petition. Accordingly, we now consider only whether the summary judgment for Kunard was correct. See *Cohen v. Battaglia*, 296 Kan. 542, 293 P.3d 752 (2013).

ANALYSIS

Issue: *Administrator Jeanes' malpractice claim on behalf of Anton's estate for Kunard's negligent estate planning does not survive Anton's death under K.S.A. 60-1801.*

As a threshold matter, we observe that administrator Jeanes' first amended petition alleged that Kunard committed "professional negligence," breached her fiduciary duty owed to Anton and her estate, and breached her contract with Anton. In the district court's

order granting Kunard summary judgment, the court determined that all of Jeanes' causes of action against Kunard "sound[ed] in tort." The Court of Appeals panel specifically affirmed that part of the order. *Jeanes*, 40 Kan. App. 2d at 288 ("Consequently, the trial court correctly determined that the evidence did not support a breach of contract claim and that the gravamen of Jeanes' claims against Kunard sounded in tort.").

In administrator Jeanes' petition for review, she does not request our review of these court decisions that her claims sound in tort. And we generally do not consider issues that are not presented in the petition for review. See *Rucker v. DeLay*, 295 Kan. 826, 829, 289 P.3d 1166 (2012) (absent application of a permissive exception for plain error, this court will not consider any issues not presented in the petition for review or fairly included therein). Consequently, the sole specific issue before us is whether Jeanes' claim for legal malpractice against Kunard qualifies as a survival action so she may pursue it after Anton's death.

*Standard of review*

This court's standard for reviewing a district court's grant of summary judgment is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

To the extent we are asked to interpret statutes, we exercise unlimited review. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012).

*Jeanes' cause of action did not accrue until after Anton died.*

As an introductory matter, we observe that generally, under common law, tort claims did not survive either the death of the tortfeasor or the plaintiff. See *Price, Administrator v. Holmes*, 198 Kan. 100, 105-06, 422 P.2d 976 (1967) (citing 1 C.J.S., Abatement & Revival § 136) (the general rule is that a tort action does not survive the death of either the person to whom or the person by whom the wrong was done). A Kansas statute now controls whether a cause of action survives one's death. See *Nicholas v. Nicholas*, 277 Kan. 171, 189, 83 P.3d 214 (2004). That statute, K.S.A. 60-1801, states:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to *real or personal estate*, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; *and the action may be brought notwithstanding the death of the person entitled* or liable to the same." (Emphasis added.)

To determine if administrator Jeanes' malpractice cause of action survived Anton's death so it may be pursued against Kunard, we must first determine when that cause of action accrued. See *Price*, 198 Kan. at 104 ("To determine whether a cause of action survived [death], either in tort or in contract, we must ascertain when each would have accrued.").

We observe that generally a cause of action accrues as soon as the right to maintain a legal action arises. *Estate of Draper v. Bank of America*, 288 Kan. 510, 534, 205 P.3d 698 (2009). The test to determine when an action accrues is that point when a plaintiff could have first filed and prosecuted an action to a successful conclusion. *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986). While K.S.A. 60-513(b) is most frequently used in resolving statute of limitation issues in tort cases, it also provides guidance as to when a tort cause of action accrues. *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 270-71, 806 P.2d 997 (1991). The statute states:

"[T]he causes of action listed in subsection (a) [, *i.e.*, tort claims,] *shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury*, or, if the fact of injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence

until the *fact of injury becomes reasonably ascertainable to the injured party . . . ."* (Emphasis added.) K.S.A. 60-513(b).

K.S.A. 60-513(b) clearly instructs that a cause of action accrues when the plaintiff suffers "substantial injury"—and not necessarily when the negligent act occurred that ultimately caused the injury.

This statute is consistent with Kansas caselaw which has focused on the date of injury when determining when a cause of action accrues—particularly legal malpractice. For example, in *Pancake House*, the plaintiff corporation alleged that its former attorneys committed legal malpractice when they elected to represent the individual interests of certain corporate stockholders against the corporation. The defendant law firm, Redmond, Redmond, O'Brien & Nazar, had represented the corporation Pancake House for nearly 20 years. After the death of a major stockholder, an ownership dispute erupted. Using the Redmond law firm, on October 16, 1980, one shareholder then sued another shareholder and the corporation to enforce a buy-sell agreement. Approximately 2 years after the filing of the lawsuit, on September 7, 1982, the district court ordered Pancake House to purchase the stock.

Approximately 1 year after that order, on October 25, 1983, Pancake House sued the Redmond law firm. It specifically contended that the firm's filing of the shareholder's prior lawsuit against the corporation was malicious, negligent, a breach of fiduciary duty, and a breach of contract. The district court dismissed Pancake House's suit on statute of limitations grounds.

On appeal, this court first concluded that Pancake House's lawsuit against the firm was a malpractice claim that "sound[ed] in tort." 239 Kan. at 86. To determine if Pancake House's lawsuit was barred by the statute of limitations, we first determined when its cause of action accrued. We recognized that, depending upon the facts and circumstances of each case, at least four theories can apply in Kansas when determining the time of cause of action accrual for legal malpractice:

"(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

"(2) *The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.*

"(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

"(4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated." (Emphasis added.) 239 Kan. at 87.

In *Pancake House*, this court rejected the argument that the malpractice cause of action accrued when the Redmond law firm first sued Pancake House on October 16, 1980. Instead, we elected to follow the "damage rule" described in the italicized language above. We observed that the damage rule was followed in other tort cases and had been used in at least one other case involving a legal malpractice claim. 239 Kan. at 87-88 (citing *Chavez, Executrix v. Saums*, 1 Kan. App. 2d 564, 565, 571 P.2d 62 [1977]). We then concluded that Pancake House suffered appreciable harm and actual damages on September 7, 1982—the day the district court ordered Pancake House to purchase the stock. 239 Kan. at 88.

Five years later we followed a similar analytical path in *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 806 P.2d 997 (1991). There, Dearborn's attorney, Charles Wilson, drafted an asset purchase agreement for Dearborn as seller and its buyer. Dearborn later alleged that the agreement failed to require the buyer to purchase stock and instead merely provided an option to purchase. Before claiming that the agreement was negligently drafted, seller Dearborn first sued the buyer to force the stock purchase. That lawsuit was largely unsuccessful, with the district court concluding that the agreement only granted the buyer " 'an option to buy stock.' " 248 Kan. at 261. Dearborn then sued attorney Wilson for malpractice. The district court dismissed that action on statute of limitations grounds.

Before this court, seller Dearborn argued that its legal malpractice cause of action did not accrue until its prior lawsuit against the buyer was resolved. We concluded that the malpractice action instead accrued the moment Dearborn became aware that the agreement was negligently drafted because it was at that point that Dearborn could have "reasonably ascertain[ed] that the injury suffered was the result of the defendants' malpractice." 248 Kan. at 270-71

(citing K.S.A. 60-513[b]). In reaching our conclusion, we also obviously rejected the argument that the cause of action accrued at the earlier time—when attorney Wilson negligently drafted the agreement. As we explained:

"Many times, as in the present case, the negligent act occurs at the time the attorney performs, or fails to perform, services for the client. However, there may be considerable lapse of time *before the client actually suffers injury*. An additional delay may occur between the time that the client suffered injury and the time that the client knew, or reasonably should have known, that the injury was caused by the attorney's malpractice. . . .

"In the instant case the alleged negligent act of Wilson occurred at the time he prepared the Dearborn/Holenbeck agreement, and arguably the plaintiffs suffered injury at that time when they did not get the agreement that Dearborn hired Wilson to prepare. *However, no actionable injury had occurred . . . .*" (Emphasis added.) *Dearborn*, 248 Kan. at 265.

Consistent with this court's decisions in *Dearborn* and *Pancake House* and the Court of Appeals' decision in *Saums*, other Kansas appellate court decisions have concluded that a legal malpractice cause of action accrues when the entity suffers the injury, not necessarily at the time of the attorney's negligent act. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 117, 936 P.2d 714 (1997) (malpractice cause of action did not arise with the attorney's negligent act but rather when the client was actually damaged by it); *Moss v. Mamalis*, 36 Kan. App. 2d 151, 156, 138 P.3d 380 (2006) (same); see also *Price*, 198 Kan. at 104-06 (a negligence cause of action arising out of a banker's faulty execution of a will did not accrue when the will was drafted and executed but rather when the plaintiff was damaged, *i.e.*, when the will was later declared void).

Administrator Jeanes essentially responds to this caselaw by arguing that Anton was indeed harmed by Kunard's malpractice during her lifetime—which obviously created a pre-death cause of action—and the estate taxes are merely an "escalation of those damages." She contends Anton could have sued Kunard during her lifetime to recover attorney fees and costs associated with restructuring her inadequate estate plan before the millions of dollars of estate tax damages actually occurred. More specifically, Jeanes alleges that Anton's claim for these fees and costs then survived

her death and morphed into a larger claim for "damages proximately caused by Kunard's malpractice [including] excessive estate taxes."

As the Court of Appeals panel ably noted, the Virginia Supreme Court rejected this same argument in *Rutter v. Jones, Blechman, Woltz & Kelly*, 264 Va. 310, 568 S.E.2d 693 (2002). Like the instant case, there an estate executor sued an attorney for legal malpractice alleging that negligent preparation of the decedent's testamentary documents resulted in excessive tax liability. The court described the "crux of [the] case" as whether "an executor [may] bring an action for legal malpractice in connection with the preparation of testamentary documents." 264 Va. at 313. As a result, it too had to determine when the executor's cause of action accrued.

Specifically, the executor argued that a cause of action accrued during the decedent's lifetime because she could have sued the attorneys to recover the amounts she had paid to them for negligently preparing the documents. Moreover, the executor argued that the tax liability and associated accounting and legal expenses incurred after the decedent's death were merely an escalation of the damages caused by the attorneys' malpractice.

In rejecting this argument of mere escalation of pre-death damages, the Virginia Supreme Court stated:

"The *injury or damage that was proximately caused by the legal malpractice* alleged in this case was the additional amount of the tax assessed against the estate and additional legal and accounting fees required—*all of which did not arise until after [decedent's] death.*

"Accordingly, because the cause of action for legal malpractice asserted in this case did not come into existence during [decedent's] lifetime and thus did not survive her death, we will affirm the judgment of the trial court." (Emphasis added.) 264 Va. at 314.

Similarly, the injury about which administrator Jeanes complains—the additional millions of dollars of taxes assessed against the Anton estate—did not occur until after Anton's death. Indeed, in Jeanes' first amended petition, she does not allege that Kunard caused Anton damage during Anton's lifetime. And as the district court noted in its summary judgment order, Jeanes' later pretrial order made no such allegation either. The Court of Appeals ob-

served that Jeanes' pretrial order actually "framed the damages to Anton's estate as the amount of taxes imposed after Anton's death." *Jeanes v. Bank of America*, 40 Kan. App. 2d 281, 299, 191 P.3d 325 (2008). So we must reject Jeanes' "escalation of damages" argument.

Finally, in Jeanes' petition for review, she asks that we reject the damage rule in Kansas and adopt the reasoning of the Texas Supreme Court in *Belt v. Oppenheimer Blend Harrison & Tate*, 192 S.W.3d 780 (Tex. 2006). In *Belt*, the estate executors sued an attorney for malpractice alleging that his negligent will drafting resulted in excessive estate tax liability. The court began its analysis by recognizing that under the common law, actions for damage to property survive the death of the injured party. The court next concluded that the cause of action accrued when the attorney drafted the will.

The *Belt* court relied on a prior Texas opinion that generally stated a "legal malpractice claim accrues 'when facts have come into existence that authorize a claimant to seek a judicial remedy.' " *Belt*, 192 S.W.3d at 786 (citing *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 [Tex. 2001]). But under many years of Kansas caselaw, typically a legal malpractice cause of action instead accrues when a "fact of injury becomes reasonably ascertainable to the injured party." See, *e.g.*, *KPERS*, 262 Kan. at 117. For this reason, we are not persuaded by the *Belt* court's reasoning.

In short, we reject Jeanes' damage escalation argument and the *Belt* court rationale—and again follow the damage rule. Kunard last provided legal services for Anton in June 2000, and Anton died on April 24, 2003. Her death ultimately resulted in her estate paying estate and inheritance taxes on January 24, 2004. The alleged injury—excessive taxes on the estate—only became "reasonably ascertainable" after her death. See K.S.A. 60-513(b); *Dearborn*, 248 Kan. at 270-71; see also *Price*, 198 Kan. at 105.

*Because Jeanes' cause of action did not accrue during Anton's lifetime, it cannot survive her death.*

Usually, a lawsuit that does not accrue during a person's lifetime does not survive the person's death. See 1 C.J.S., Abatement and

Revival § 146, p. 153 ("Generally, a cause of action by or against a particular person does not survive his or her death unless it accrued in his or her lifetime."). We emphasized this rule in the analogous case of *Price, Administrator v. Holmes*, 198 Kan. 100.

In *Price*, an estate administrator filed suit to recover damages suffered by his decedent because of a banker's faulty execution of a will in which decedent was a beneficiary. To determine if the cause of action survived the death, the *Price* court first determined when the action accrued. As mentioned, it concluded that the tort cause of action arising out of the faulty execution of a will did not accrue until damages had occurred, *i.e.*, when the will was declared void. 198 Kan. at 104-06. The *Price* court then held that because the decedent died approximately 2 weeks before damages occurred—before the will was declared void—the cause of action did not survive her. It stated:

"If no cause of action in tort accrued in favor of Lillian Price [decedent] until she sustained damage, then no cause of action in tort survived at her death for the simple reason that *she died before that time*." (Emphasis added.) 198 Kan. at 105.

We expressed the general principle controlling our decision as follows: "A cause of action does not survive in favor of a personal representative of a decedent *unless it accrued in favor of the decedent in his lifetime.*" (Emphasis added.) 198 Kan. at 106 (quoting *Neal v. Neal*, 250 F.2d 885, 890 [1957]); see 1 C.J.S., Abatement and Revival § 130, p. 134 ("A claim under a survival statute is one which arose during the lifetime of the deceased and survives his or her death.").

Consistent with this approach, we have continued to recognize that a survival action brought under K.S.A. 60-1801 allows a personal representative of the estate to recover "damages accrued by the injured party between the date of injury and death for the benefit of the decedent's estate." *Mason v. Gerin Corp.*, 231 Kan. 718, 721, 647 P.2d 1340 (1982); *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 337, 552 P.2d 1363 (1976) ("This survival statute authorizes recovery of damages accruing between the injury and the death of the injured person."); *Martin v. Naik*,

43 Kan. App. 2d 591, 595, 228 P.3d 1092 (2010) (same). Stated in the reverse, "[I]n an action under the survival statute to recover damages for personal injury to plaintiff's decedent who died as result of such injury, recovery may not be had for loss of earnings or earning capacity beyond the time of death." *Flowers v. Marshall*, 208 Kan. 900, 908, 494 P.2d 1184 (1972).

Despite our extensive caselaw requiring that the cause of action accrue during the lifetime of the decedent in order to survive his or her death, Jeanes' petition for review directs us to decisions from two other jurisdictions. She first asks that we follow the Ohio Court of Appeals' rationale in *Hosfelt v. Miller*, No. 97-JE-50, 2000 WL 1741909 (Ohio App. 2000) (unpublished opinion). In *Hosfelt*, an estate sued an attorney for malpractice alleging that his negligence resulted in excessive estate tax liability.

*Hosfelt*, however, is of little support. As our Court of Appeals panel in this case pointed out, the *Hosfelt* opinion stated that various Ohio courts had presumed "that a personal representative of the estate has standing to assert legal malpractice claims *which arose during the decedent's lifetime*." (Emphasis added.) 2000 WL 1741909, at *5. But the *Hosfelt* court then spent little time discussing whether its instant claim arose during the decedent's lifetime. And it did not determine whenever the cause of action accrued. Rather, the *Hosfelt* court simply appeared to assume that the cause of action accrued during the decedent's lifetime. So it is not persuasive.

Jeanes next champions the Oregon Court of Appeals decision in *Sizemore v. Swift*, 79 Or. App. 352, 719 P.2d 500 (1986). As our Court of Appeals panel discussed, in *Sizemore* a father received payments from a spendthrift trust for which he was the beneficiary. When he died, the trustee determined that the spendthrift trust included no provision for its distribution on the father's death. The father's son and sole heir filed a successful declaratory judgment action, which ultimately declared that the remainder of the trust corpus should be paid to the father's estate. Then, the son's attorney opened the father's estate and was appointed administrator. The attorney then paid his legal fees and the estate's administrative

costs out of the trust's corpus and distributed the remainder to the son.

The son then sued for malpractice the attorney who had drafted the spendthrift trust for not including a provision for distribution of the trust after the beneficiary's death. The administrator of the father's estate was substituted as the plaintiff, bringing a claim under the survival statute. The estate claimed legal fees and costs charged by the attorney who litigated the declaratory judgment action and ultimately received as its damages the trust corpus on behalf of the father's estate.

The *Sizemore* court first resolved whether the administrator of the estate was the real party in interest. Without much discussion or citation, the *Sizemore* court determined that the estate was the appropriate party in interest because the estate paid the attorney fees for the declaratory judgment. 79 Or. App. at 356. Finally, the *Sizemore* court determined that the expenses of the declaratory judgment were damages that would support a negligence action. It stated: "If defendants in this case negligently drafted [father's] will, and if that negligence led to litigation expenses that [the] estate would not otherwise have incurred, and if the other requirements for liability, such as foreseeability, are satisfied, the estate was damaged by the amount of the litigation expenses." 79 Or. App. at 358.

*Sizemore* is not persuasive. As in Ohio's *Hosfelt,* the Oregon court did not consider when the cause of action accrued against the attorneys who allegedly were negligent in preparing the trust. And no party argued that the estate's cause of action was barred by the state's survival statute.

The holdings in *Hosfelt* and *Sizemore* certainly must be weighed against our contrary Kansas caselaw. They must also be weighed against the contrary caselaw from a number of other jurisdictions that have addressed a fact pattern quite similar to the instant case. See 1 Mallen & Smith, Legal Malpractice § 7:10, p. 813 (2012) (a legal malpractice cause of action survives the client's death and exists in favor of the estate only if "the elements of the cause of action pre-existed death") (citing *Rutter,* 264 Va. 310); see also *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999) (the estate

representative's malpractice claim against an attorney drafting an allegedly faulty will did not survive because of a lack of "pre-death injury"); *In re Estate of Drwenski*, 83 P.3d 457 (Wyo. 2004) (Daughter, on behalf of father's estate, sued father's attorney for malpractice for failing to timely effect father's divorce. Father died before divorce final, which meant widow inherited money from estate she would not have inherited if divorced. In interpreting statute very similar to K.S.A. 60-1801, court concluded that "a cause of action must arise before death to survive after death." Because father's death triggered alleged malpractice, court concluded cause of action would not survive his death.).

In addition to our own caselaw, we find these holdings and their rationale persuasive.

Because administrator Jeanes' cause of action did not accrue until after Anton's death, it does not qualify as a survival action under K.S.A. 60-1801. It is therefore barred. Accordingly, on this issue the Court of Appeals opinion affirming the district court is affirmed and the district court is affirmed.

LUCKERT, J., not participating.
BRAZIL, S.J., assigned.