No. 111,231

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.H.,
A Minor Child Under the Age of Eighteen.

SYLLABUS BY THE COURT

1.

The State must prove a child is in need of care by clear and convincing evidence.

2.

When an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence.

3.

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact.

4.

K.S.A. 2013 Supp. 38-2202(d)(11) adds to the list of children in need of care those children who have been residing in the same residence with a sibling who has been physically, mentally, or emotionally abused or neglected, or sexually abused.

5.

The Revised Kansas Code for Care of Children shall be liberally construed to carry out the policies of the State which are to consider the safety and welfare of a child

1

to be paramount in all proceedings under the code; make the ongoing physical, mental, and emotional needs of the child decisive considerations in all proceedings under the code; and, provide for the protection of children who have been subject to physical, mental, or emotional abuse or neglect.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed September 26, 2014. Affirmed.

*Dennis J. Stanchik*, of Olathe, for appellant father.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before BUSER, P.J., HILL and BRUNS, JJ.

HILL, J.: In this case we must decide if there is sufficient evidence to support the district court's finding that a 5-month-old girl, A.H., was a child in need of care as defined by law. The public policy of this state is found in K.S.A. 2013 Supp. 38-2202(d)(11), which states that the definition of a child in need of care includes a child who "has been residing in the same residence with a sibling . . . who has been physically, mentally or emotionally abused or neglected, or sexually abused."

Because the district court found this girl's brother, W.H., to be a child in need of care for witnessing domestic abuse and this finding is undisputed by the father, and W.H. and his sister have been living in the same home, we hold the district court properly found A.H. to be a child in need of care. We affirm the decision.

*Background*

Out of concern that A.H.'s father and mother were not adequately providing for the protection of their 5-month-old daughter due, in part, to A.H.'s continued exposure to the alleged domestic violence between her parents, the State filed a child in need of care petition in April 2013. A.H.'s brother, W.H., also lived in the home. He was not quite 2 years old at the time of the filing of the petition. A.H. also had two other siblings, ages 9 (V.H.) and 8 (T.H.). When the petition was filed, the district court held a temporary custody hearing for A.H. and W.H. The court placed A.H. and W.H. in the custody of the Secretary of the Kansas Department for Children and Families and ordered both children to be placed with Mother. Father was not to have any contact with Mother except through their attorneys, and he was to have no contact, either direct or indirect, with any of his four children.

At the evidentiary hearing on the petition, the State presented testimony from Mother and Lisa Knight, a case manager employed by Kaw Valley Behavioral Center who began working with the family in May 2013. Mother acknowledged that she did not contest the allegations in the State's petition. However, she then testified that she had never told anyone that Father had physically abused her or that she was scared of him. She stated that Father had never hit her, threatened to put her in a body bag, or cursed in front of the children.

When questioned by the guardian ad litem, Mother admitted she had told a Kaw Valley Center worker in March 2013 that Father had hit her on top of her head so it would not leave a bruise. She then acknowledged that her son, W.H., also hits her on top of her head. Mother also acknowledged that she and Father "have been verbally not nice to each other."

Case Manager Knight testified about her conversations with Mother regarding the nature of her relationship with Father. When asked whether Father had threatened Mother, Knight replied:

"[Mother] actually said to me that [Father] said that he would not let her leave except through a body bag and that when she had tried to leave a few times before whenever arguments got really heated to the point where there was exchange of words and almost to the point of violence that he would block the doorway and not allow her to leave."

Knight also testified that Mother reported that Father had made other life-threatening statements to her. When acknowledging that W.H. was exhibiting violent behavior, Knight stated that during a supervised visit she saw him punch Mother "extremely hard in the face two times in a row." When Knight spoke to her about the punching, Mother admitted, "She believed [W.H.] had learned that from watching [Father] punch her." Knight also disputed Mother's testimony that there was no domestic violence between Mother and Father. She also testified that she had concerns for A.H.'s safety while residing with Mother and Father.

In his response to this evidence, Father presented the testimony of one of his girlfriends, who is the mother of his two older children. She testified that she was never physically or emotionally abused by Father. She then stated that she had lied to the guardian ad litem in this case when she had told him that "[Father] had hit me in my head repeatedly, that he had called me all sorts of violent names."

The judge was not convinced by the evidence presented by Father. The district court found A.H. and the three other children were all children in need of care. The district court ordered Mother to continue with the last 2 months of her existing 6-month reintegration plan with Kaw Valley Behavioral Center. The court ordered Father to begin

4

a new 6-month reintegration plan and ordered that the no-contact order to continue at the discretion of the officials at Kaw Valley Center.

Father appeals the adjudication of A.H. as a child in need of care, arguing that there is no clear and convincing evidence that she is a child in need of care.

*How we will proceed.*

The law is well settled—the State must prove by clear and convincing evidence that A.H. is a child in need of care. See K.S.A. 2013 Supp. 38-2250. The Kansas Supreme Court has clarified our role:

> "[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705. Moreover, to the extent our review requires us to interpret the provisions of K.S.A. 2013 Supp. 38-2202(d)(3), which is a question of law, we have unlimited review. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

The statutory definition of "child in need of care" is found in K.S.A. 2013 Supp. 38-2202(d). The State cites K.S.A. 2013 Supp. 38-2202(d)(3), which defines a child in need of care as one who "has been physically, mentally or emotionally abused or neglected or sexually abused." We note importantly here that K.S.A. 2013 Supp. 38-2202(d)(11) adds to the list of children in need of care those children who have "been

residing in the same residence with a sibling . . . who has been physically, mentally or emotionally abused or neglected, or sexually abused."

The legislature has made it clear that the Revised Kansas Code For Care of Children shall be liberally construed to carry out the policies of the State which are to consider the safety and welfare of a child to be paramount in all proceedings under the code; make the ongoing physical, mental, and emotional needs of the child decisive considerations in all proceedings under the code; and, provide for the protection of children who have been subject to physical, mental, or emotional abuse or neglect. See K.S.A. 2013 Supp. 38-2201(b)(1),(3),(7).

*There was scant evidence offered about A.H.*

Because she was a babe in arms and had no visible bruising, not much was said about this 5-month-old girl at the hearing—but in contrast, there was plenty of evidence concerning domestic violence in her home. The State generally alleged A.H. was a child in need of care because she (1) was without adequate parental care, control, or subsistence and the condition was not due solely to the lack of financial means of the child's parents or other custodian; (2) was without the care or control necessary for the child's physical, mental, or emotional health according to K.S.A. 2013 Supp. 38-2202(d)(2); and (3) had been physically, mentally, or emotionally abused or neglected or sexually abused according to K.S.A. 2013 Supp. 38-2202(d)(3).

The State's petition specifically alleged officers had investigated whether Father physically abused V.H. and T.H. in October 2010 and the existence of a prior history of the family's involvement with the Department. That history included a July 2010 report of Father physically abusing T.H. and an October 2012 report indicating a lack of parental supervision of T.H., V.H., and W.H. The October report expressed, *inter alia*, concerns regarding the children's access to illegal drugs and exposure to domestic

6

violence. That same month, the Department received additional concerns regarding Father's drug use and bruising on Mother, possibly caused by Father. The petition also alleged reports by school employees to the Department expressing concerns about the health and hygiene of the children as well as domestic violence and drug use in the household. In addition, a March 2013 report expressed concern W.H. and A.H. were witnessing domestic violence, with W.H. imitating such violence on Mother when frustrated or angry, and swearing at her when told not to do something.

The district court, after pointing out Knight's testimony and finding Mother's denial of any physical abuse not credible, found that the children suffered emotional abuse as defined under K.S.A. 2013 Supp. 38-2202(d)(3). The district court stated that it believed "by more than clear and convincing [evidence] that [A.H., W.H., V.H., and T.H.] have been in at the very minimum a chaotic and abusive—emotionally abusive situation and that the children are in need of care as it relates to [Father]." The journal entry, referring to separate case numbers for each of the four children, states:

> "The Court finds from the evidence presented that all the children, including [A.H.], have been exposed to domestic violence in the home, and therefore meet the definition of a child who has been emotionally abused. The Court therefore adjudicates [A.H.] to be a child in need of care as that term is defined by K.S.A. 38-2202(d)(3). The Court specifically finds that all four children have witnessed or been exposed to the domestic violence in the home, and also meet the definition of child in need of care as that term is defined by K.S.A. 38-2202(d)(3)."

Perhaps the most telling evidence was the report of W.H. hitting Mother as Father hit Mother. W.H. clearly met the definition of being emotionally abused under K.S.A. 2013 Supp. 38-2202(d)(3). Thus, the district court's finding that A.H. is a child in need of care is supported by K.S.A. 2013 Supp. 38-2202(d)(11). Because the district court correctly found W.H. to be a child in need of care and nobody disputes that A.H. and W.H. both live in the same residence, the district court, instead of relying on K.S.A. 2013

7

Supp. 38-2202(d)(3), could have declared A.H. a child in need of care under K.S.A. 2013 Supp. 38-2202(d)(11).

Essentially, Father is arguing that there is no connection between the evidence of domestic violence and A.H., other than living in the same house. But Father ignores Mother's stipulation that A.H. witnessed the domestic violence. This supports a finding of emotional harm under K.S.A. 2013 Supp. 38-2202(d)(3). We need not speculate about A.H. further on this point other than recognizing that another panel of this court affirmed the termination of parental rights, in part because Mother was completely unable or unwilling to address the harm caused to her children witnessing the domestic violence in the house. See *In re T.J.C.-R.*, 106,848, 2012 WL 1759828, at *4 (Kan. App. 2012) (unpublished opinion).

Concerns about children residing in abusive homes are not new. Children are rarely reared in isolation. They have brothers and sisters. Our court has held: "If the trial court observes abuse of one child, the judge should not be forced to refrain from taking action until the next child suffers injury. [Citations omitted.]" *In re A.B.*, 12 Kan. App. 2d 391, 392, 746 P.2d 96 (1987). Young bodies cannot withstand many savage blows; young psyches, even fewer.

Here, the testimony at the evidentiary hearing, when viewed in the light most favorable to the State, unmistakably indicates W.H. contemporaneously observed domestic violence between Father and Mother and suffered emotional harm by being placed in a position of physical danger. This harm is manifested in behavioral problems acting out or mimicking Father's violent behavior. Because there was clear and convincing evidence the district court properly adjudicated A.H.'s brother as a child in need of care, it was appropriate for the district court to make the same child in need of care finding for A.H. and the two other siblings. See *In re R.B.S.*, 29 Kan. App. 2d 1023, 1029, 36 P.3d 300 (2001). In *R.B.S.*, our court held that exposing the older sibling to the

parent's violent relationship and their failure to feed or clothe the child properly is physically and emotionally abusive behavior justifying a child in need of care adjudication for a younger sibling.

This holding upholds the policy established by the legislature to liberally construe the Revised Kansas Code for Care of Children in order to protect children.

Affirmed.