NOT DESIGNATED FOR PUBLICATION

No. 113,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.L., D.N., and C.N.,
Minor Children Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed March 18, 2016.
Affirmed.

*James T. Yoakum*, of Kansas City, for appellant natural mother.

*Kristianne N. Bryant*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for
appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*:  The Wyandotte District Court severed H.L.'s parental rights to her
three children identified by their initials in the caption of this case. She contends that she
is not an unfit mother and it is in her children's best interests to remain with her. After
reviewing the record on appeal in the light most favorable to the State as the law requires,
we hold that clear and convincing evidence supports the district court's finding that H.L.
is unfit. Her parental rights to the children should be terminated and it is in the children's
best interests that her parental rights be severed. We affirm.

*We start with the termination hearing.*

The State filed a motion in December 2014, seeking to terminate Mother's parental rights because she continued to live with a batterer, defend him, and minimize his behavior even though there were numerous incidents of abuse that were life-threatening. The State cited an incident in September 2014, where police were called to the parents' home because Father pushed Mother and kicked out the front window. The State alleged that D.N., one of the children, has shown signs of aggressive behavior. The State also sought to terminate Mother's rights because she had failed to complete the batterers' intervention program and other programs that were part of her treatment plan. And, the State sought to terminate Mother's rights because she suffers a mental illness that renders her unlikely to care for the needs of her children; the failure of agency aid to rehabilitate the family; and a demonstrated lack of effort to adjust her conduct to meet the needs of her children.

The court held a hearing on the termination of Mother's and Father's parental rights in January 2015. Officer James Vogel testified to the incident of domestic violence at the parents' home in September 2014. Officer Vogel was dispatched to Mother and Father's home after a third-party caller claimed his daughter was hiding in a closet, scared of her spouse. When Officer Vogel arrived, he noticed the front window had a big hole in it. Mother answered the door and explained that Father had become angry, pushed her, and kicked the window out. Father was arrested for domestic battery for pushing Mother and criminal damage to property for breaking the window. Officer Vogel testified that he had been dispatched to Mother's and Father's address on a previous occasion because of a disturbance call and had arrested Father for outstanding warrants.

Cynthia Moses, clinical director of Transitions Counseling Services, testified regarding Father's domestic violence offender assessment. She was concerned with the level of domestic violence, the level of altercations, the number of altercations that

2

occurred in the home, both with and without the children present, and Father's minimization and denial of the domestic violence. She testified there was emotional, verbal, and physical violence. There were 3 or more abuse and violence incidents in the past 6 months. Father also used intimidation and threats. He had threatened Mother with a kitchen knife; hit walls, doors, and cabinets when angry or frustrated; blocked doors so she could not leave the room; broken her phone; and used looks, gestures, and certain actions to frighten her. When drunk, he had become abusive, agitated, aggressive, and violent. Father did not complete his substance abuse evaluation, batterers' intervention program, or Safe Kids program. He has not accepted responsibility for the domestic violence.

A witness who is not identified in the record testified about Mother's and Father's visitation with the children. Visitation became more consistent beginning in February 2014, when the parents procured their own housing. Of 45 opportunities for visits beginning in February, 7 were cancelled for various reasons  The parents were appropriate throughout the visits. The parents would greet the children appropriately. They would engage with all three children by getting on the ground and playing with them. If D.L. got too tough with his younger brother and sister, the parents would explain the need to use "soft touches." The witness observed a parent/child bond. The parents' home was appropriate and thoroughly cleaned.

Regina Singleton, therapist and owner of Transitions Counseling Services, testified that Mother completed a domestic violence assessment, which included a mental health assessment, and a Safe Kids assessment. Mother admitted that she and Father have gotten into physical and verbal fights with one another, particularly when one or both of them had been drinking. Singleton recommended 24 sessions of batterers' intervention and a substance abuse evaluation for Mother. Mother's case was closed and reopened 3 times because of nonattendance. Typically, a case is closed after 6 missed sessions, but Mother was given a lot of leeway because she would complain that she did not have

3

transportation or that Father would not let her attend. Thus, there was a "significant amount of time" that Mother did not attend sessions. Mother has made no effort to start the program again.

Singleton further testified that Mother minimized the domestic violence in her home; she did not believe she or her children were in any danger. Mother had not completed the drug and alcohol evaluation. Mother had also not completed the 6 hours of child endangerment parenting program she was required to attend by the Municipal Court. Singleton testified that transportation is not an excuse because Medicaid would pay for transportation; all she had to do was call and set it up. Singleton testified that there were four reasons why the State had custody of the children: Family Preservation's concerns, Father's abuse of alcohol, Mother's unstable mental health, and the parent's volatile relationship. Singleton stated that Mother had made no progress toward those concerns. She testified Mother has bipolar disorder and posttraumatic stress disorder.

Singleton also testified about the domestic violence. She stated that Mother has been both a victim and perpetrator of domestic violence, usually when alcohol was involved. There were fights in front of the children. Mother has stated that she had left Father in the past, but he always finds her. Resources would have been provided to Mother if she wanted to leave Father. Singleton testified that Mother admitted Father had kicked her in the stomach before the police came in September 2014. She also testified Mother and Father were arrested or ticketed for an argument that turned into a fight. The argument began when Father had received some money from a family member. Mother wanted cigarettes or a pop. Father told her it was his money and he was not going to buy her anything. Father was identified as a victim in this incident. Singleton further testified that Mother had explained in the batterers' intervention group that Father knows how to make it look like he is the victim when police arrive. Once he took a plate, broke it, and cut his arm with it. Singleton also testified that Mother came to a group meeting with a bump on her head one day, and she was black and blue. Mother said it was from a fight

4

with Father where he had been drinking. She said Father drinks on a daily basis. Mother has also said she is afraid to talk in group sessions because she would get into trouble with Father. Singleton testified that termination of parental rights was appropriate because the severity of the domestic violence has not changed and the children are at risk of being harmed.

Ramona MacDougall, court services officer, testified about the court orders that had been imposed in this case. MacDougall testified that Mother and Father had acquired stable housing and income (they obtained stable housing in March 2014). She testified that Mother had been diagnosed with bipolar disorder and was getting treatment through Wyandot Center. MacDougall testified that neither Mother nor Father had completed their court-ordered batterers' program. She testified that she told Mother that the Logan Group, which was an online course, was not court-approved. She did not feel the parents had made any progress to indicate the children would be safe with them and would terminate Mother's rights because of the domestic violence.

Mother testified that she and Father completed an online domestic violence class with the Logan Group and participated in the Parents as Teachers Program. She testified that she missed a meeting with Transitions because her insurance would no longer cover the transportation. She testified that there had been no domestic violence in the presence of the children. She denied that Father had pushed her in September 2014 when the window was broken. She testified that she now has more resources in the community, like Wyandot Center, and can protect her children. She testified that the children love playing in their new house when they visit—it has a backyard and a room for the children. Mother admitted that she missed 20 sessions of batterers' intervention class, which led to her case being closed the first time. She did not view Father as an obstacle to reintegration with her children.

The district court found that it was established by clear and convincing evidence that there was a domestic violence incident on September 17 or 18, 2014, and that Mother reported during group sessions numerous incidents of violence for which the children were present. The district court found that 24 weeks of domestic violence classes were needed because of Mother's denial of the abuse, and Mother reported in group that Father exercises control over her by warning her not to say too much. The district court stated,

> "Look, I—I—I don't know, at this point, whether mom knows that she is in a horribly dangerous, violent relationship and knows she has to deny that for the purposes of this case, or she really doesn't know it, either one of which lead to the same conclusion."

The district court found that Father's alcohol use was a "big-time" contributor to the domestic violence and he had failed to schedule his drug and alcohol evaluation for 2 years after the children were taken into custody. The district court found that although the children should be with Mother, that she loves them, Mother could not protect the children from Father. The court found that Father had "borderline personality type" and he had made statements that he did not really want the kids back. The court continued:

> "And we've gone through this for two years now. And mom sits today and says, you know, it's not a problem. His drinking is not a problem. His violence is not a problem. And that demonstrates clearly that, after two years of working on this, she can't protect herself and she can't protect her children from this man."

The district court found by clear and convincing evidence that Mother was unfit and the conduct or condition that made her unfit was unlikely to change in the foreseeable future for the following statutory reasons:

6

- That she suffers emotional illness, mental illness, mental deficiency, or physical disability of such duration or nature it renders her unable to care for the ongoing needs of her children. K.S.A. 2014 Supp. 38-2269(b)(1);

- There have been more than reasonable efforts by appropriate agencies to rehabilitate the family, and those efforts have failed. K.S.A. 2014 Supp. 38-2269(b)(7);

- She has demonstrated a lack of effort to adjust her circumstances, conduct or conditions to meet the needs of the children. K.S.A. 2014 Supp. 38-2269(b)(8);

- She has failed to carry out a reasonable plan approved by the court directed toward the integration of the children into the parental home. K.S.A. 2014 Supp. 38-2269(c)(3).

Father was also found unfit by clear and convincing evidence. Mother filed a notice of appeal.

*We review some points of law.*

A district court may terminate parental rights when a child has been adjudicated a child in need of care and the court makes three findings. The court must find by clear and convincing evidence that (1) the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child; (2) the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future; and (3) termination of parental rights is in the best interests of the child. K.S.A. 2014 Supp. 38-2269(a), (g)(1). When deciding whether the parent is unfit, the court must consider a nonexclusive list of factors in K.S.A. 2014 Supp. 38-2269(b). When the child is not in the physical custody of the parent—which is the case here—the court must also consider four additional factors listed in K.S.A. 2014 Supp. 38-2269(c). Any one of these factors may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2014 Supp. 38-2269(f). In deciding whether termination is in the best interests of the child, the

7

court must give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2014 Supp. 38-2269(g)(1).

When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could find it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated. In making this determination, this court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

*We review the evidence of Mother's unfitness.*

Mother first contends that there was insufficient evidence that she was unfit. Specifically, she contends that the court improperly relied on the fact that she has bipolar disorder without first finding that the condition caused her to be unable to care for her children. She contends that her parental rights were terminated solely because of Father's physical abuse of her, and she was unwilling to cut Father out of her life.

Indeed, the court found that Mother had an emotional illness, mental illness, mental deficiency, or physical disability of such duration or nature it renders her unable to care for the ongoing needs of her children under K.S.A. 2014 Supp. 38-2269(b)(1). The statute provides that a disability shall not constitute a basis for termination of parental rights "without a specific showing that there is a causal relation between the disability and harm to the child." K.S.A. 2014 Supp. 38-2201(c)(1); *In re J.L.*, No. 110,993, 2014 WL 4627604, *6 (Kan. App. 2014) (unpublished opinion).

The record supports that Mother has a mental illness, but not that it renders her unable to care for her children. One of DCF's early investigations showed that Mother

8

was not taking medication for her bipolar mood disorder during her pregnancy. At the termination trial, Singleton testified that Mother had been diagnosed with bipolar disorder and she had posttraumatic stress disorder. She testified that one of the reasons that the children were in DCF custody was Mother's unstable mental condition and she had made no progress in this regard, but she did not elaborate. MacDougall testified that Mother was getting treatment at the Wyandot Center for her mental condition, which included bipolar I disorder and borderline personality disorder. She testified that Mother has been an active participant in med management and therapy and believed that she was still participating. Mother was not ignoring her diagnosis; rather, the only concern was the domestic violence in her home. Mother was appropriate when visiting with the children and her parenting skills were not problematic.

The record simply does not support a finding that Mother's condition, when treated, renders her unable to care for her children. The district court even stated, "I'm happy and I'm satisfied, although some people don't seem to be, that both the mom and dad are engaged with their mental health providers at Wyandot Center and in a real way. I don't have any reason to doubt that." The court went on to say that it was

> "absolutely true, that the children should be with their mom, that she loves [them], that she can care for them. But she can't protect herself from their father.
> "And I don't think the same thing of the father. Look, he's a narcissistic personality type. Borderline personality type was one of the diagnoses."

Thus, the finding that Mother's mental condition rendered her unable to care for her children was not supported by clear and convincing evidence. But, the court made three other statutory findings, and one factor standing alone may be sufficient to determine that a parent is unfit. See K.S.A. 2014 Supp. 38-2269(f).

The court also found that there have been more than reasonable efforts by appropriate agencies to rehabilitate the family, and those efforts have failed under K.S.A. 2014 Supp. 38-2269(b)(7), and that Mother has failed to carry out a reasonable plan approved by the court directed toward the integration of the children into the parental home under K.S.A. 2014 Supp. 38-2269(c)(3). These two findings are supported by clear and convincing evidence.

The court ordered supervised visits and that Mother:  find and maintain stable income and housing; participate in parenting classes; participate in a mental health assessment and follow the recommendations; take all prescribed medications; and participate in a domestic violence assessment and follow the recommendations.

Mother did complete many of these tasks. A witness testified that there were some missed visits, but visitation had become more consistent beginning in February 2014, when the parents obtained their own housing. Mother was appropriate during the visits, would engage the children and play with them, would stop D.L. from becoming too rough with his younger brother and sister, and there was a parent/child bond. MacDougall testified that Mother had participated in the Parents as Teachers program, but that it ended. There were no concerns about Mother's parenting skills. MacDougall testified that Mother and Father had obtained stable housing and income. Singleton testified that Mother completed a mental health assessment and a domestic violence assessment. MacDougall testified that Mother had been an active participant in med management and therapy for her mental illness.

However, Mother did not follow the recommendations of her domestic violence assessment. Singleton recommended 24 sessions of batterers' intervention and a substance abuse evaluation. Mother did not complete the batterers' intervention program. Singleton testified that termination of parental rights was appropriate because due to the severity of the domestic violence, the children were at risk of being harmed. Mother also

did not complete the drug and alcohol evaluation or 6 hours of the child endangerment parenting program.

Mother contends that her failure to comply with the DCF-approved batterers' intervention program was insufficient evidence of unfitness because she had made every effort to comply with the program, her cancellations were reasonable, and she completed an online course.

However, Singleton testified that Mother had not made every effort to comply with the batterers' intervention program. Typically a person may miss up to 6 sessions in a row, but Mother was given a lot of leeway because she would complain that she did not have transportation or that Father would not let her attend. Thus, there was a "significant amount of time" that Mother did not attend sessions. Mother had made no effort to start the program again. Mother admitted that she missed 20 sessions of batterers' intervention class. Singleton testified that transportation was not an excuse because Medicaid would pay for transportation and her case managers would sometimes bring her.

MacDougall testified that the Logan Group online program was not court-approved. Indeed, it was a 4-hour online course, whereas, the recommendation was for Mother to attend 24 sessions of batterers' intervention. Mother's own testimony demonstrated that she had not completed an effective domestic violence program because she denied that the domestic violence was a problem. Thus, it was established by clear and convincing evidence that Mother had failed to complete a reasonable domestic violence program despite agency efforts.

Moreover, the district court also made a statutory finding that Mother had demonstrated a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of her children under K.S.A. 2014 Supp. 38-2269(b)(8).

11

Mother contends that she made sufficient strides toward improving her household between 2012 and 2015. She obtained a stable income and stable housing. The visits were regular, her parenting skills were not an issue, and she was seeing a therapist for her mental illness. However, Mother did not adjust her circumstances to rid her home of domestic violence; thus, putting her children at risk.

There was clear and convincing evidence of domestic violence in the home, some of which occurred with the children present. Officer Vogel testified to the incident in September 2014 where Father had pushed Mother and kicked a window out. Moses testified that a number of altercations occurred in the home, some with the children present. Father had threatened Mother with a kitchen knife; he had gotten angry and hit walls, doors, and cabinets; he blocked the door so Mother could not leave; and he broke her phone. There has been emotional, verbal, and physical violence in the home and Father has neither accepted responsibility, nor completed a substance abuse evaluation or the batterers' intervention program.

Singleton also testified that fights have occurred in front of the children. She testified that Mother admitted Father had kicked her in the stomach; Mother and Father were ticketed for an argument that turned into a fight where Father was identified as the victim; and Mother came to a group session with a bump on her head, and was black and blue after a fight with Father. MacDougall testified that she did not feel the parents had made any progress to indicate the children would be safe with them. Moreover, Mother denied that the domestic violence incidents occurred and did not see Father as an obstacle to reintegration.

Thus, although Mother had made strides in many areas, Mother had made little effort to adjust her circumstances to prevent future domestic violence around her children. This court cannot reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. See *In re B.D.-Y.*, 286 Kan. at 705.

In other cases, this court has recognized that a mother, who is a victim of domestic abuse, may be considered unfit because she is unable or unwilling to leave an abusive partner or otherwise address the harm caused to her children from witnessing domestic violence. See *In re A.H.*, 50 Kan. App. 2d 945, 950, 334 P.3d 339 (2014); *In re D.L.*, No. 113,832, 2015 WL 8591050, *7-8 (Kan. App. 2015). A parent may be held responsible for failing to take precautions to protect her child from abuse. *In re A.B.*, 12 Kan. App. 2d 391, 392, 746 P.2d 96 (1987). Here, there was no evidence that the children had been physically abused. But, there was evidence of physical violence between Mother and Father. Witnesses testified that the children were present during altercations or fights, though the testimony was nonspecific about the incidents—the children were at a high risk for injury; Mother was, at times, a perpetrator of domestic violence, usually when alcohol was involved; and, Mother displayed an unwillingness to leave Father, so the children could be exposed to the domestic violence in the future. The court noted her lack of realization:

> "But here we are two years later, mom doesn't get it. And it disturbs me, it—it— it breaks my heart because—look, do I—everything in her letter, absolutely true, that the children should be with their mom, that she loves [them], that she can care for them. But she can't protect herself from their father."

This court has stated that:

> "A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing . . . But . . . we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

A resolution in favor of Mother would likely occur far in the future, as Mother never completed the batterers' intervention program. A reasonable factfinder could have found, based on this fact, it highly probable that Mother was unfit.

13

Mother does not contend that the district court erred in finding that the conduct or condition that rendered her unfit is unlikely to change in the foreseeable future. An issue not briefed by an appellant is deemed waived and abandoned. *Superior Boiler Works, Inc., v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

*We look at the best interests of the children.*

Mother contends that terminating her parental rights without considering other alternatives was not in the children's best interests.

In deciding whether termination is in the best interests of the child, the court must give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2014 Supp. 38-2269(g)(1). The district court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed in the absence of an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010) (citing *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 [2002]). A judicial action constitutes an abuse of discretion when no reasonable person would agree with the district court or when the court bases its decision on an error of fact or law. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

The district court gave primary consideration to the physical, mental, and emotional needs of the children. It found that the two younger children needed to be freed for permanency and it was in their best interests that the parental rights be terminated. The court further found that in regard to D.L., the violent nature of the parents' relationship endangered D.L. such that termination of Mother's parental rights was in his best interest.

14

The district court did not abuse its discretion. The children had been removed from the parents' home since April 2013. The termination trial occurred almost 2 years later in January 2015. Thus, the two youngest children had been in state custody for the majority of their lives. It is not known when or if Mother will acknowledge and attempt to alleviate the domestic violence in the home. Courts must decide these cases in "child time," rather than "adult time." *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002). Thus, it was not unreasonable for the district court to conclude that termination of parental rights was in the children's best interests.

Affirmed.