NOT DESIGNATED FOR PUBLICATION

No. 121,873

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF C.B., A.C.B.,
and A.E.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK, JR., judge. Opinion filed April 10, 2020. Affirmed.

*Alexandria S. Belveal*, of Holton, for appellant.

*Keith M. Hill*, assistant of county attorney, and *Shawna Miller*, county attorney, for appellee.

Before GARDNER, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: This is an appeal from three consolidated cases brought under the revised Kansas Code for Care of Children, K.S.A. 2019 Supp. 38-2201 et seq. After an evidentiary hearing, the district court issued an order adjudicating three siblings—C.B., A.C.B., and A.E.B.—to be children in need of care. Their mother appeals the district court's decision in each case. On appeal, she contends that the decisions were not supported by clear and convincing evidence in the record. She also contends that the district court erred because there was no evidence that the abuse was still occurring in the home. For the reasons set forth in this opinion, we find that there is clear and convincing evidence in the record on appeal to support the district court's decision. Thus, we affirm.

1

FACTS

On February 28, 2019, the State filed three child in need of care (CINC) petitions, alleging that C.B., A.C.B., and A.E.B. were children in need of care. The petitions alleged that the minor children were without adequate parental care, control or subsistence; that they were without the care or control necessary for their physical, mental, or emotional health; that they had been physically, mentally, or emotionally abused or neglected or sexually abused; and that they had been residing in the same residence with a sibling or another person under 18 years of age, who had been physically, mentally, or emotionally abused, neglected, or sexually abused.

Moreover, the CINC petitions alleged that a detective in the Jackson County Sheriff's Office filed for protective custody of C.B. on February 26, 2019, after she disclosed during a "safe talk" interview that she had been the victim of sexual assault by her older brothers and that she had made comments regarding contemplating suicide. In addition, the petitions alleged that a Jackson County Sheriff's Deputy had also applied for protective custody of A.C.B. and A.E.B. because he believed they would continue to be victims of sexual abuse if they remained in the home.

A review of the record reveals that C.B. told the detective that she and her sisters had been sexually assaulted by their brothers separately and together on numerous occasions up to three or four times a week. C.B. indicated that the abuse happened both inside their home as well as in a field beside the house. Although we will not discuss all of the details in this opinion, C.B. reported that she had been woken up by one of her brothers having various types of sex with her in the middle of the night. According to C.B., her parents had caught her brothers sexually assaulting her and her sisters several times but never reported the incidents to authorities.

C.B. stated that she had a bad relationship with her father, alleging both physical and verbal abuse. She also said that her father told her he was "disappointed in [her]" for reporting the abuse. Additionally, C.B. indicated that she had reported the abuse in the home to one of her uncles as well as to a babysitter. Likewise, C.B. said that she told her priest about the abuse and he advised her to report it to the authorities. C.B. asserted that her mother told her she could report the abuse but refused to take her to make a report.

On April 16, 2019, the district court held an adjudication hearing regarding the three minor children. Prior to the hearing, the guardian ad litems for the children and the natural father entered into written stipulations and no contest statements. However, the children's mother contested the allegation that the children were in need of care. At the hearing, the mother testified that she homeschools her children during the week, and that their father is a truck driver. When the father is home on weekends, the mother works as a nurse.

The mother testified that there were ten children in the family, and she thought six of them had alleged sexual abuse in the home at some point. She claimed that her father-in-law, who is deceased, had sexually abused two of her sons when they were children. The mother testified that she only recently became aware of that abuse but acknowledged that it could have been stopped if it had been reported earlier.

In addition, the mother testified that she became aware of the alleged abuse against C.B., A.C.B., and A.E.B. around Christmas in 2018. At that time, C.B. told her mother that her older brothers had sexually abused her and her sisters for several years. According to the mother, C.B. told her the abuse occurred between seven and nine years ago, but C.B. later told her that the abuse had happened as recently as five years ago. However, the mother did not report the abuse to law enforcement. Instead, she testified she felt their father should address the abuse.

3

In early 2019, C.B. reported the abuse to a babysitter, a priest, and an uncle. When these individuals attempted to intervene, the mother reacted defensively, testifying that she told the babysitter that she would not work for her again and calling the priest a "backstabber." Later, when an aunt intervened, the mother also called her an "enemy." When asked at trial whether she made these statements, she did not deny doing so. The mother testified that she was concerned that one of her sons, who had a history of violence and was no longer living in the home, would react violently or become suicidal if word about the abuse was made public. Moreover, the mother testified that she was concerned about "small town" gossip about such a serious allegation.

Although she did not report the abuse to law enforcement, the mother testified that she privately confronted the son who was still living in the house about the allegations. She stated that he told her that he had also been sexually abused by the older son in the past. According to the mother, when she asked the son who still lived at home about the allegations made by his sister, he became depressed and stayed secluded in his bedroom for several days.

When questioned regarding her knowledge of the abuse allegedly suffered by C.B., A.C.B., and A.E.B., the mother initially testified that she did not witness any abuse in the home. However, she later admitted that she recalled one incident where she suspected something unusual. Specifically, the mother testified that she had once walked into the girl's bedroom and saw her older son—who was 13 or 14 years old at the time— on top of one of his younger sisters—who was 8 years old at the time.

When the State questioned the mother about the specific allegations in this case, she testified as follows:

> "Q: And you're aware that your daughters . . . have been sexually abused, correct?
> "A: That's what's been alleged.

"Q: So do you believe them or not?

"A: I believe something happened, yes.

"Q: Do you believe they were sexually abused or not?

"A: If you're going to make me say yes or no because—okay. Yes.

"Q: And you understand that the allegation is that [one of your son's had sexual intercourse with one of your minor daughters], correct?

"A: I did not—[C.B.] did not go into great detail, so you know a lot more about that than I do. She did not go into great detail with me about what happened.

"Q: Do you have any reason to believe that is not the allegation?

"A: No.

"Q: And you understand that the allegation is also that your son [had anal intercourse with your daughter]; correct?

"A: Yes, that's--yes, that's true.

"Q: And you believe [C.B.] when she says that this happened, correct?

"A: Yes."

Later, the mother testified that she was not disputing that all three minor children had been sexually abused by their older brothers. The mother also acknowledged she was aware that criminal charges had been filed against her sons. At that point in the proceedings, the guardian ad litem for A.C.B. and A.E.B. requested that the district court enter a judgment that the minor children were children in need of care under K.S.A. 2019 Supp. 38-2202(d)(3) because they had been "sexually abused."

After considering the evidence, the district court found that clear and convincing evidence had been presented to show that C.B., A.C.B., and A.E.B. had each been sexually abused. As a result, the district court found them to be children in need of care under K.S.A. 2019 Supp. 38-2202(d)(3) and (d)(11). In so ruling, the district court further found that the caselaw does not put a temporal limit on a CINC finding. Thereafter, the mother filed a timely notice of appeal.

5

In this appeal, the mother raises two issues. First, she challenges the sufficiency of the evidence to support the district court's determination that the three minor children were children in need of care. Second, she challenges the district court's application of the CINC statutes to reach abuse that was no longer occurring in the home. In response, the State argues that there is clear and convincing evidence in the record to support the district court's determination and that under the circumstances presented, a CINC finding was appropriate.

*Sufficiency of the Evidence*

CINC actions stem from the State's interest in protecting the safety and welfare of children within its jurisdiction. See K.S.A. 2019 Supp. 38-2201(a) (proceedings under the Code "deemed to be pursuant to the parental power of the state"); and K.S.A. 2019 Supp. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"). To obtain an order adjudicating a child to be in need of care, the State "must prove by clear and convincing evidence" that the child is a CINC under one of the statutory criteria enumerated in K.S.A. 2019 Supp. 38-2202(d). K.S.A. 2019 Supp. 38-2250. Although a CINC adjudication is a beginning step in the process and is often followed by attempts to reunify the child with the parent pursuant to K.S.A. 2019 Supp. 38-2251(b), a parent may appeal the adjudication of his or her child as being in need of care under K.S.A. 2019 Supp. 38-2273(a).

In reviewing a district court's finding that a child is in need of care, we must consider all of the evidence in the light most favorable to the State determine whether there is clear and convincing evidence from which a rational fact-finder could reach this conclusion. See K.S.A. 2019 Supp. 38-2250; *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Evidence is clear and convincing if "the factfinder believes that the truth of

6

the facts asserted is highly probable." 286 Kan. at 697. When we review challenges to the sufficiency of evidence, we do not pass on the credibility of witnesses, weigh conflicting evidence, or redetermine questions of fact. 286 Kan. at 705.

The statutory definition of "child in need of care" is found in K.S.A. 2019 Supp. 38-2202(d). Here, the district court found that the minor children were in need of care pursuant to K.S.A. 2019 Supp. 38-2202(d)(3), which defines a child as being in need of care who "has been physically, mentally or emotionally abused or neglected or sexually abused." The district court also found them to be in need of care pursuant to K.S.A. 2019 Supp. 38-2202(d)(11), which provides that a child as being in need of care who has "been residing in the same residence with a sibling . . . who has been physically, mentally or emotionally abused or neglected, or sexually abused."

In support of its conclusion that all three minor children were in need of care, the district court heard testimony from the mother in which she acknowledged that as many as six of her ten children had been sexually abused by other family members at some point in time. In addition, when asked whether she had reason to doubt the allegations made by the three minor children, the mother testified that she did not. Further, and perhaps most troublingly, the mother testified that she did not report any of the abuse to authorities and admitted that she resisted efforts by third parties to bring C.B.'s allegations of abuse to light. Finally, the district court noted the ongoing criminal proceedings against the two brothers who allegedly perpetrated the abuse of C.B. and her sisters.

Based on our review of the evidence in the light most favorable to the State, we conclude that a reasonable fact-finder could determine that there is clear and convincing evidence that the three minor children were in need of care under K.S.A. 2019 Supp. 38-2202(d)(3) and (11); see *In re A.H.*, 50 Kan. App. 2d 945, 946, 334 P.3d 339 (2014). This does not mean that the minor children cannot at some point be reintegrated into the

family home nor does it mean that the parents parental rights should be terminated. It does, however, mean that the district court took reasonable steps to protect the safety and welfare of C.B., A.C.B., and A.E.B.

*Application of K.S.A. 2019 Supp. 38-2202(d)(3) and (d)(11)*

Next, the mother challenges the district court's application of the provisions of K.S.A. 2019 Supp. 38-2202(d)(3) and (d)(11) in this case. Because this involves a question of law, our review of this issue is unlimited. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013). Furthermore, the Kansas Legislature has made it clear that the revised Kansas Code for Care of Children "shall be liberally construed" to carry out the public policy of protecting the safety and welfare of children. K.S.A. 2019 Supp. 38-2201(b). In particular, it is paramount to provide for the protection of children who have been subject to physical, mental, or emotional abuse or neglect, or sexual abuse and to encourage the reporting of suspected child abuse and neglect, or sexual abuse. K.S.A. 2019 Supp. 38-2201(b)(3), (b)(5), (b)(7); *In re A.H.*, 50 Kan. App. 2d at 948-49.

Here, the mother argues that the allegations made by three of her minor children suggest that the sexual abuse ended five years before the adjudication hearing. As such, she argues that the CINC statutes should not be used because there is no longer abuse taking place in the home. However, the mother does not cite any authority to support her contention that the CINC statutes place a temporal limit on the reach of the CINC statutes to protect children. Instead, as the district court found, we note that several panels of our court have explicitly found that there is no such limitation.

In the case of *In re D.H.*, 57 Kan. App. 2d 421, 429, 453 P.3d 870 (2019), *rev. denied* 311 Kan. __ (February 27, 2020), a panel of this court held:

8

"[W]e conclude the temporal scope of the circumstances to be considered by the district court in deciding whether to adjudicate a child as one in need of care must be based on the plain language of the statutory criteria upon which the court is making the adjudication decision. If the statutory criterion is framed in the present perfect tense, then the adjudication decision will depend upon a view of the child's circumstances in the past and perhaps continuing to the present. If the statutory criterion is framed in the present tense, then the adjudication decision will depend upon a view of the child's present circumstances existing on the day of the adjudication hearing."

See also *In re A.M.*, 2013 WL 518019 at *3 (Kan. App. 2013) (unpublished opinion) (holding that the plain language of the statute does not require the district court to make its adjudication decision based only on the circumstances that existed on the day of the adjudication hearing and noting that several of the provisions rely on the present perfect tense, "has been").

Consistent with these opinions, the district court determined that the relevant statutory provisions, K.S.A. 2019 Supp. 38-2202(d)(3) and (d)(11), both use the present perfect tense—"has been"—to define a child in need of care. Accordingly, we find no error in the district court's application of those statutory provisions to find the minor children in this case to be in need of care. Likewise, it is important to recognize that in addition to the allegations of the repeated sexual abuse in the home in the past, the mother admitted to avoiding, delaying, and or otherwise interfering with the reporting of the alleged abuse to law enforcement in violation of K.S.A. 2019 Supp. 38-2201(b)(5), which "encourage[s] the reporting of suspected child abuse and neglect."

Affirmed.